IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

SHAWN R. JARRETT, SR.,
    Plaintiff,

v.                                                            Civil No. 3:20cv125 (DJN)

EXPERIAN INFORMATION
SOLUTIONS, INC., *et al.*,
    Defendants.

**MEMORANDUM OPINION**

Plaintiff Shawn Jarratt ("Plaintiff") brought this action against Defendant Cenlar FSB ("Cenlar")[1] and three credit reporting agencies — Equifax Information Services LLC ("Equifax"), Trans Union LLC ("Trans Union") and Experian Information Solutions, Inc. ("Experian") (collectively, the "CRAs") — for allegedly inaccurately reporting him as in arrears on his mortgage and failing to reasonably investigate his dispute into their reporting. This matter comes before the Court on Cenlar's Motion for Judgment on the Pleadings (the "Motion" (ECF No. 26)), moving this Court to dismiss Plaintiff's Complaint (ECF No. 1) for failure to state a claim upon which relief can be granted. The Court dispenses with oral argument, as it will not aid in the decisional process. For the reasons set forth below, the Court will DENY Cenlar's Motion.

---

[1]     Plaintiff names Cenlar Agency, Inc. as a defendant in this action, but Cenlar FSB claims that Plaintiff should have named it as the proper defendant.

## I. BACKGROUND

A motion for judgment on the pleadings filed pursuant to Rule 12(c) uses the same standard as a Rule 12(b)(6) motion. *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009). Accordingly, in reviewing Cenlar's Motion for Judgment on the Pleadings, the Court will accept Plaintiff's well-pleaded factual allegations as true, though the Court need not accept Plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Based on these principles, the Court accepts the following facts.

### A. Plaintiff's Mortgage

On November 7, 2007, Plaintiff entered into a refinance mortgage loan (the "Loan") in the amount of $58,000 in favor of Virginia Credit Union, Inc. (Compl. ¶ 8; (the "Note" (ECF No. 21-1)).) The Loan was evidenced by the Note and secured by a deed of trust ("Deed of Trust" (ECF No. 21-2)) for the property at 24801 Mortar Branch Road, Stony Creek, Virginia 23882 (the "Property"). (Compl. ¶¶ 8-9.) Cenlar currently services the Loan. (Compl. ¶ 10.)

The Note called for Plaintiff to make his monthly mortgage payment in the amount of $419.72 on the "first day of each month beginning on January 1, 2008." (Note ¶ 3.) The Note also provided for a 5% late charge of the overdue payment of principal and interest in the event that Plaintiff failed to make the required payment within fifteen calendar days of the payment's due date. (Note ¶ 6.) Further, the Deed of Trust allowed the Lender to "hold such unapplied funds until [Plaintiff] makes payment to bring the loan current" in the event that Plaintiff made partial payments that did not bring the Loan current. (Deed of Trust ¶ 1.) Moreover, the Deed of Trust does not obligate the Lender to accept partial payments that fail to bring the Loan current or apply them at the time accepted. (Deed of Trust ¶ 1.)

Plaintiff alleges that Cenlar reported Plaintiff as in arrears on his mortgage to the CRAs. (Compl. ¶ 11.) But, Plaintiff claims that "the loan was current." (Compl. ¶ 11.) Thereafter, on May 19, 2019, Plaintiff's counsel sent a dispute letter (the "Letter" (ECF No. 1-1)) to the CRAs, copying Cenlar. The Letter claimed that Plaintiff "is current on that mortgage loan and has been current on that mortgage since October 2017." (Letter at 1.) It requested that the CRAs "remove the inaccurate reporting of that loan." (Letter at 1.) The Letter further claimed that "South Park Branch of Virginia Credit Union has advised [Plaintiff] that he has been current on the said loan." (Letter at 1.)

According to Plaintiff, the CRAs each notified Cenlar of his dispute. (Compl. ¶ 13.) However, Cenlar "did not properly respond" to the dispute and "took no proper action to correct what had been Cenlar's incorrect report" to the CRAs. (Compl. ¶ 14.) Indeed, Plaintiff alleges that "[n]one of the defendants took any action in response" to Plaintiff's dispute. (Compl. ¶ 17.) According to Plaintiff, by failing to investigate the dispute, Cenlar violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). (Compl. ¶ 19.)

As a result of this allegedly inaccurate reporting, Plaintiff claims to have been turned down for credit, denied consumer credit to buy a Christmas present for his son and deterred from otherwise seeking credit. (Compl. ¶ 20.) He also claims to have sustained "considerable emotional distress." (Compl. ¶ 20.) Plaintiff seeks an award of actual damages, compensatory damages, punitive damages, statutory damages and attorney's fees. (Compl. at 5.)

B.      **Cenlar's Responsive Pleading and Motion for Judgment**

On July 6, 2020, Cenlar filed its Answer and Affirmative Defenses ("Answer" (ECF No. 21)), denying nearly all of the allegations in the Complaint. To its Answer, Cenlar attached the Note (ECF No. 21-1), the Deed of Trust (ECF No. 21-2), Plaintiff's purported payment history

(ECF No. 21-3) and the automated consumer dispute verification ("ACDV" (ECF No. 21-4)) responses sent to the respective CRAs. Cenlar did not attempt to establish the authenticity of these documents.

Then, on December 4, 2020, Cenlar filed the instant Motion for Judgment on the Pleadings. Cenlar primarily argues that it accurately reported Plaintiff's account, thereby defeating his claim. (Def. Cenlar FSB's Mem. in Supp. of its Mot. for J. on the Pleadings ("Def.'s Mem.") (ECF No. 27) at 8.) In support, Cenlar points to the payment history to establish that "from October 2017 to May 2019, Plaintiff never made his Loan payment on the first of the month and was never current on his Loan during the relevant time period." (Def.'s Mem. at 8.) According to Cenlar, Plaintiff made no payment on October 1, 2017, thus falling behind on the September and October payments. (Def.'s Mem. at 3.) Then, on October 27, 2017, Plaintiff made a payment of $699.16, which Cenlar applied to his September payment, leaving the October payment still outstanding. (Def.'s Mem. at 3.) Thereafter, Plaintiff made payments of various amounts on various dates, which Cenlar then applied to late charges and the outstanding months. (Def.'s Mem. at 3-4.) For example, on August of 2018, Plaintiff made additional payments totaling $725.40, of which Cenlar applied $343.26 to accumulated late charges. (Def.'s Mem. at 4.) Cenlar held the remaining funds in suspense, because they could not cover a full payment. (Def.'s Mem. at 4.) Then, through May 6, 2019, Plaintiff continued to make late payments, but never enough to bring his loan current. (Def.'s Mem. at 4.)

Cenlar argues in its Motion that the payment history demonstrates that Cenlar accurately reported Plaintiff's account, because he actually fell behind on his payments and failed to bring his mortgage loan current. (Def.'s Mem. at 6.) According to Cenlar, this accurate reporting forecloses Plaintiff's FCRA claims. (Def.'s Mem. at 8.) Moreover, Cenlar argues that Plaintiff

4

fails to allege sufficient facts to show that it did not conduct a reasonable investigation into his dispute. (Def.'s Mem. at 9.) Further, Cenlar contends that Plaintiff fails to plausibly allege any damages that resulted from Cenlar's reporting. (Def.'s Mem. at 11.) Finally, Cenlar argues that this failure to allege damages warrants dismissal for lack of standing, as Plaintiff has not suffered an injury-in-fact sufficient under Article III. (Def.'s Mem. at 12.)

In opposition to Cenlar's Motion, Plaintiff filed his Memorandum in Opposition to Motion for Judgment on the Pleadings Filed by Cenlar FSB ("Pl.'s Opp." (ECF No. 30)). Plaintiff claims that a triable issue of fact exists as to whether he had fallen behind on his mortgage payments. (Pl.'s Opp. at 4.) To support this argument, Plaintiff attached an affidavit from himself to his opposition brief, claiming that he remained current on his payments and that a Cenlar representative told him as much in October 2017. (Decl. of Shawn Jarratt ("Jarratt Decl.") (ECF No. 30-1) ¶ 7.) He received similar assurances in December of 2017. (Jarratt Decl. ¶ 8.) Plaintiff also claims that Cenlar returned a check on December 13, 2017, because it did not cover the full amount of his required payment. (Jarratt Decl. ¶ 10.) This occurred again on August 13, 2018, but Jarratt could not deposit the returned check "because it was stale when [he] received it." (Jarratt Decl. ¶ 15.) According to Plaintiff, this "indicate[s] errors in the way Cenlar dealt with payments." (Pl.'s Opp. at 5.) Because a triable issue of fact remains as to whether Cenlar accurately reported Plaintiff's account, he claims that the Court must deny Cenlar's Motion. (Pl.'s Opp. at 5-6.) On January 25, 2021, Cenlar filed its Reply in Support of its Motion for Judgment on the Pleadings ("Def.'s Reply" (ECF No. 31)), rendering this matter now ripe for review.

5

## II. STANDARD OF REVIEW

Rule 12 of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) applies the same standard as a Rule 12(b)(6) motion. *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Therefore, a motion for judgment on the pleadings tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion for judgment on the pleadings, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.2d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all

6

the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

However, a Rule 12(c) motion expands the universe of documents that the Court may consider. In addition to the complaint, the Court may consider the answer, exhibits to the answer and "exhibits to the Rule 12(c) motions that were integral to the complaint and authentic." *Massey v. Ojaniit*, 759 F.3d 343, 347-48 (4th Cir. 2014). In considering those documents, a court should only grant a motion for judgment on the pleadings when no genuine issues of material fact remain and "only questions of law remain." *Va. Imports v. Kirin Brewery of Am.*, 296 F. Supp. 2d 691, 695 (E.D. Va. 2003).

### III. ANALYSIS

Plaintiff's claims against Cenlar allege that it violated 15 U.S.C. § 1681s-2(b)(1), which sets forth the steps that a furnisher must take after it receives notice of a consumer's dispute from a CRA. Specifically, Plaintiff alleges that Cenlar failed to conduct an investigation of his dispute and that it inaccurately reported his account as past due and owing.

The FCRA requires creditors who furnish information to report accurate information. 15 U.S.C. § 1681s-2(a). When a CRA notifies a furnisher that a consumer has disputed information in his report, the FCRA requires the furnisher to conduct a reasonable investigation of its records to determine whether it can verify the disputed information. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004).[2] Thus, a plaintiff bringing a claim under § 1681s-2(b) must

---

[2] The FCRA does not provide a consumer with a private right of action to enforce the accurate reporting requirement. Instead, a consumer may sue a furnisher only for the furnisher's actions taken after it receives notice of the dispute from a CRA. 15 U.S.C. § 1681s-2(c) (precluding private actions to enforce claims for inaccurate reporting under § 1681s-2(a)); *Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008) ("FCRA

show that "(1) the furnisher provided inaccurate information, and (2) after the furnisher received notification of a consumer dispute from a CRA, it failed to conduct a reasonable investigation of its records to determine whether the information previously provided was incomplete or inaccurate." *Perry v. Toyota Motor Credit Corp.*, 2019 WL 332813, at *7 (W.D. Va. Jan. 25, 2019).

Cenlar argues that Plaintiff's claim against it fails for three reasons: (1) Cenlar accurately reported Plaintiff's mortgage account; (2) Cenlar did not fail to undertake a reasonable investigation into Plaintiff's dispute; and, (3) Plaintiff lacks standing. The Court will address Cenlar's standing argument first, because an absence of standing deprives the Court of the power to adjudicate anything further about the claim. *Griffin v. Dep't of Labor Fed. Credit Union*, 293 F. Supp. 3d 576, 578 (E.D. Va. 2018), *aff'd*, 912 F.3d 649 (4th Cir. 2019).

### A. Plaintiff has Standing to Assert a Claim against Cenlar.

Cenlar argues that Plaintiff lacks standing, because he has not suffered an "injury-in-fact" within the meaning of Article III. (Def.'s Mem. at 12.) Specifically, Cenlar argues that Plaintiff offers only vague allegations of an injury and fails to allege sufficient details of an injury to warrant a finding of standing. (Def.'s Mem. at 12.)

Article III of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." U.S. Const. art. III § 2. To satisfy the case-or-controversy requirement of Article III, a plaintiff must establish his standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). To meet the "irreducible constitutional minimum" requirements for standing, a plaintiff must establish three elements: (1) that the plaintiff has sustained an injury in

---

explicitly bars private suits for violations of § 1681s-2(a), but consumers can still bring private suits for violations of § 1681s-2(b).").

8

fact; (2) that the injury is traceable to the defendants' actions; and, (3) that the injury likely can be redressed by a favorable judicial decision. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011) (citing *Lujan,* 504 U.S. at 560–61). Relevant here, to demonstrate an injury in fact, a plaintiff must suffer an invasion of a legally-protected interest that is concrete and particularized, as well as being actual or imminent. *Gaston Copper Recycling Corp*, 629 F.3d at 396 (citing *Lujan*, 504 U.S. at 560); *McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010). In the credit reporting context, the Supreme Court has stated that "not all inaccuracies cause harm or present any material risk of harm." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016).

Generally, challenges to standing fall under Rule 12(b)(1), which allows a movant to challenge subject matter jurisdiction. Although Cenlar raised this issue within the context of a Rule 12(c) motion for judgment on the pleadings, the Court will review Cenlar's assertion through the correct 12(b)(1) lens. *See Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 311 (4th Cir. 2009) (noting that the district court re-characterized a defendant's challenge to standing from a motion to dismiss for failure to state a claim under Rule 12(b)(6) to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)). The district court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (internal quotations omitted). Where a party moves under Rule 12(b)(1) on the basis that a complaint fails to allege facts supporting the court's subject matter jurisdiction, the plaintiff "is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Further, where, as here, a defendant has not provided evidence to dispute the veracity of the jurisdictional allegations in the complaint, the Court accepts facts alleged in the complaint as

9

true just as it would under Rule 12(b)(6). *Kerns v. United States*, 585 F.3d 187, 192-93 (4th Cir. 2009) (citing *Adams*, 697 F.2d at 1219 (4th Cir. 1982)). Ultimately, the plaintiff bears the burden of "clearly . . . alleg[ing] facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

Here, Plaintiff has alleged sufficient facts demonstrating that he may invoke judicial resolution of the dispute. Plaintiff alleges that, as a result of Cenlar inaccurately reporting his account as past due, he "was turned down for credit," "was denied consumer credit to buy a Christmas present for his son," "was deterred from otherwise seeking credit" and "sustained considerable emotional distress." (Compl. ¶ 20.) Although these allegations provide minimal details, when taken as true at this stage, Plaintiff has alleged harm sufficient to state an injury-in-fact with respect to Cenlar inaccurately reporting his mortgage account.

Reporting someone as late on his mortgage generally carries more risk of harm than the example of an inaccuracy that would not cause harm provided in *Spokeo* — reporting an incorrect zip code. *See* 136 S. Ct. at 1550 (giving as "[a]n example that comes readily to mind is an incorrect zip code" as the type of inaccuracy that would not present any "material risk of harm"). Plaintiff alleges that he has been denied credit on multiple occasions due to the reporting of the Cenlar account, the exact type of harm that Congress sought to prevent in enacting the FCRA. *See Dreher v. Experian Information Solutions, Inc.*, 856 F.3d 337, 347 (4th Cir. 2017) (finding that the plaintiff who had not suffered adversely due to an alleged error on his credit report lacked standing and had not suffered "the harm Congress sought to prevent in enacting the FCRA"). Although he provides scant details of these credit denials, his factual allegations contain more than legal conclusions. Taking his allegations as true, Plaintiff has

10

sufficiently alleged that he has suffered a harm as a result of Cenlar's reporting. Accordingly, Cenlar's challenge to Plaintiff's standing fails at this stage.

### B. Plaintiff has Sufficiently Alleged an Inaccuracy.

The primary argument that Cenlar offers in support of dismissal arises from its contention that it accurately reported Plaintiff's account. And according to Cenlar, this accuracy forecloses liability as a data furnisher under the FCRA. (Def.'s Mem. at 8.)

Although § 1681s-2(b) does not specifically require an inaccuracy in a furnisher's reporting, courts have found that a plaintiff must show furnishings of inaccurate information to state a claim under § 1681s-2(b). *See Kelly v. SunTrust Bank*, 2016 WL 775781, at *4 (E.D. Va. Feb. 25, 2016) ("As previously discussed, to establish a failure to reinvestigate claim, a plaintiff must establish that the disputed information was in fact inaccurate."); *see cf. Saunders*, 526 F.3d at 149-50 (assessing accuracy as a threshold question in denying furnisher's summary judgment motion). A furnisher reports information inaccurately when the information is patently incorrect or "misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001).

Here, Cenlar attached the payment history associated with Plaintiff's account and the ACDVs that it returned to the CRAs. Cenlar claims that these documents contradict Plaintiff's allegations that he was current on his mortgage and that Cenlar nevertheless reported him as in arrears. However, the Court cannot consider these documents at this stage. "True, a court deciding a Rule 12(c) motion may consider documents attached to the Answer, so long as they are central to the plaintiff's claim and of undisputed authenticity." *Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 435 (M.D.N.C. 2011). Clearly, the payment history plays a central role in Plaintiff's claim, as it will determine whether Cenlar accurately reported Plaintiff

11

as in arrears on his mortgage account. However, Plaintiff has challenged the authenticity of the payment history. (Pl.'s Opp. at 4-5.) And, Cenlar has not attempted to establish the authenticity of the payment history by way of an affidavit from the custodian of records or otherwise. Nor has Cenlar provided the Court with the reporting history for the loan. Yet, Cenlar denied that it reported Plaintiff's account as in arrears. (*See* Answer ¶ 11 (denying allegation that it reported Plaintiff's account as in arrears)).[3] Thus, without authentic documents to contradict Plaintiff's allegations that he was current on his loan, the Court cannot take Cenlar's assertions that it accurately reported Plaintiff's account as in arrears as true at this stage. *Burke v. Nationstar Mortg.*, 2016 WL 4231705, at *8 (E.D. Va. Aug. 9, 2016). Therefore, the Court cannot determine as a matter of law that Plaintiff had fallen behind on his loan or that Cenlar accurately reported him as behind on his loan.

### C. Plaintiff Adequately Alleges a Failure to Reasonably Investigate.

Cenlar further argues that Plaintiff has not alleged sufficient facts to support the failure to investigate element of a claim under § 1681s-2(b). (Def.'s Mem. at 9.) Specifically, Cenlar argues that Plaintiff only offers speculation and conclusory legal conclusions that Cenlar failed to properly conduct an investigation into Plaintiff's dispute. (Def.'s Mem. at 10.)

When a furnisher receives notice of a consumer dispute from a CRA, § 1681s-2(b) requires the furnisher to conduct a reasonable investigation of its records to determine whether it can verify the disputed information. *Johnson*, 357 F.3d at 431. During the investigation, furnishers must determine "whether the information that they previously reported to a CRA is

---

[3] Cenlar also attached the ACDVs to its Answer, which could show Cenlar's historical reporting of the account. However, Cenlar also failed to establish the authenticity of the ACDVs which, in any event, would not provide as definitive evidence of Cenlar's reporting as the historical reporting data.

'incomplete or inaccurate.'" *Saunders*, 526 F.3d at 148 (quoting 15 U.S.C. § 1681s-2(b)(1)(D)). "In so mandating, Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading." *Id.* The nature and specificity of the information provided to the furnisher by the CRA shapes the reasonableness of the furnisher's investigation of its records. *Johnson*, 357 F.3d at 431.

In *Johnson*, the Fourth Circuit held that the furnisher conducted an unreasonable investigation by only electronically confirming the consumer's name and address when the CRA had provided information explaining that the consumer disputed her status as a co-obligor on her husband's debt. *Id.* The court held that a jury could conclude that the furnisher's practice of never consulting underlying documents, such as account applications, did not constitute a reasonable investigation. *Id.* Ultimately, "a consumer challenging a furnisher's reinvestigation efforts must show that the furnisher failed to act with 'a degree of careful inquiry' to ensure accurate information." *Kelly*, 2016 WL 775781, at *4 (quoting *Johnson*, 357 F.3d at 430-31).

Here, Plaintiff alleges that Cenlar did not take "any action in response to [Plaintiff]'s complaint as to his credit record." (Compl. ¶ 17.) Additionally, Plaintiff alleges that Cenlar failed to investigate its own error, failed to correct its error to the CRAs and failed to take any proper action to correct its improper reporting. (Compl. ¶¶ 14, 18.) Plaintiff provides little by way of factual support, but at this point he has pled enough to survive Cenlar's Motion. Although Cenlar attached the ACDVs to its Answer, it failed to establish their authenticity, thereby precluding the Court's consideration of them at this stage. Accordingly, the Court cannot say as a matter of law, based on the record before it, that Cenlar conducted a reasonable investigation.

## IV. CONCLUSION

Considering only the pleadings and the integral and authentic attachments thereto, and viewing the facts in the light most favorable to Plaintiff, it appears that material facts remain as to whether Plaintiff fell behind on his mortgage, whether Cenlar inaccurately reported his account as past due and whether Cenlar conducted a reasonable investigation into Plaintiff's dispute. The Court notes that the documents that Cenlar submitted — which the Court could not consider at this stage — suggest that Plaintiff may struggle at later stages of the litigation to establish the elements of his § 1681s-2(b) claim against Cenlar. Indeed, it remains unclear whether Plaintiff attacks the accuracy of Cenlar's reporting or collaterally attacks the manner in which Cenlar applied the payments to his account. However, because the Court cannot rule as a matter of law based on the current record before it, Cenlar's Motion will be DENIED.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: April 12, 2021